Good morning. Illinois Appellate Court First District Court is now in session. The Sixth Division. The Honorable Justice Sanjay T. Taylor presiding. Case number 23-2365, People v. Frank Buschauer. Morning. I'm Alan Ackerman. I have the privilege of appearing before the Court on behalf of Frank Buschauer. He's appealing from a first stage summary dismissal of his verified post-conviction petition. Good morning, Mr. Ackerman. My name is Sanjay Taylor. I'm the presiding justice of the Sixth Division of the First District Appellate Court. I'm joined by my colleagues, Justice Michael Hyman and Justice Celia Gamrath. This morning we will hear argument from counsel and each side will have 20 minutes for the appellant. Mr. Ackerman, how much of that 20 minutes would you like to reserve for rebuttal? Two or three minutes. Whatever your honor thinks appropriate. Okay. Okay. And, uh, Mr. Is it People v. Varchek? Yeah. Dan People v. Varchek on behalf of the other people of the state of Illinois. Okay. Good morning. Okay. Mr. Ackerman, we'll begin with your argument. Well, first I'll say good morning to Dan, my opponent. He's been my opponent before. He's a very fine lawyer. Mr. Buschauer is in his mid-70s. He's serving a de facto life sentence, having been convicted after a bench trial in Rowing Meadows of first degree murder of his wife, Cynthia. Having said that, he filed his verified post-conviction petition following the rejection of his direct appeal. Originally, he was represented by the office of the state appellate defender. He then asked me to come in and take over the post-conviction appeal. Hence my presence. The first issue we present in post-conviction has to do with the trial court's admonitions to him regarding his jury waiver. There are four core questions that were never asked and should have been asked according to the first district precedent and the Illinois Supreme Court, if I read it correctly. The first is, was he forced to give up his right to a jury trial? The second is, was he threatened in any way? The third was, he promised anything in exchange for waiving his jury? And the last is, was he coerced into waiving his jury? Those are core questions. And in this particular case, as in every jury waiver case, the court looks at a de novo on a case-by-case basis. The record reflects that Mr. Buschauer at the time was in his late 60s or 70 years ago. No criminal history, no criminal experience. He was a chemical engineer for his entire 40 years of working. He built furnaces throughout the country and the world. Let me ask you a question, Mr. Ackerman. Defendant, in the state's brief, they say that the defendant failed to even raise much less support. So they say you did not raise or support an allegation that your client did not understand that the judge and not a jury would decide the case. That's the quote. I'd like you to respond to that allegation. The record, this court reviews a record. There was no record on direct appeal of any such thing. The record on appeal concerning his background is only in the pre-sentence report and the sentencing. Dialogue before the court. There is nothing else. In reviewing for post-conviction purposes, his entire transcript, it occurred to me as post-conviction counsel, even though I was representing him at the time, that these core questions were never asked. In my view, they're essential, particularly in a case where you're talking about an elderly person, no criminal history, and you're charged with first-degree murder, not shoplifting or trespassing or some petty offense. The judicial officer, not defense counsel, the judicial officer has that responsibility. And in this particular case, that responsibility, and you can see from the briefs, it was a very terse series of admonitions. An open court, of course, and yes, he signed a jury waiver. As a matter of fact, the judge had to put the caption on it. So these are things that the record reflects. On post-conviction, we have the obligation to raise those issues which are neither frivolous nor meritless and are arguably of merit and arguably are not frivolous. Hence the issue. If it was not de novo review, that's a different story. But on de novo review, you have the responsibility of determining whether on a case-by-case basis, this was adequate. And were those core questions important? Of course they are. Are they important to the court? They should be. Are they important to the accused? Of course they are. So there are many, many cases that are cited, both in my brief and the state's brief, where these questions are either asked and as part of the affirming, always affirming, or almost always affirming opinion from the appellate courts, they mention the criminal history of the accused. Here there is none. And that's the position he takes. Now, should that have been the subject of summary dismissal below? No, it should not have been. At a minimum, there should have been a second stage opportunity for the post-conviction counsel or the accused to say something about that issue. But that opportunity was not furnished here. Peter, to your point about lack of criminal history, that's true, of course, but Mr. Buschauer is also an educated man, perhaps even a highly educated man. He has a lot of life experience. And isn't that a relevant factor in determining whether his waiver was knowing? Presiding Justice Taylor, he was a chemical engineer for 40 years. He sat in a cubicle. He developed computer programs for furnaces, not only in the United This is what he did. He didn't have a great deal of life experience at all. This was what he did. He dealt with numbers. He dealt with mathematics. He dealt with chemicals. He did not deal with life experience. There are many, many, many young people today who have a hundred times more world and life experience and are far more urbane, if I may, than he was or even is today. So, I hope I've answered your question. If we agree with you, we still have to do the plain error analysis, correct? It's amenable to plain error, of course, and that's people versus banister. So, that should be a second stage. I'm sorry, I don't mean to. But that should be the second stage opportunity so that there is some record fleshed out. If there's no record to flesh out from the defendant's standpoint, he's the accused. Let him explain to the court, hey, if you would have told me, was I promised? Was I threatened? Yes, I was promised. Yes, I was threatened. Or no, I wasn't. I don't know what he'd say. But the point is, he has to have an opportunity, and that's what's lacking here. And that the question of law before us is whether, since there is no statute or rule, or even the Supreme Court has not said that you have to give all the admonitions. Judges do it, and I agree with you. It's best that they do it. And as you began, and I agree with what you said, it's on a case-by-case basis of the facts and circumstances of each case we have to look at. So the question becomes, in this case, the waiver, you know, that's evidence of something. It doesn't necessarily answer the question. There's more to it. But isn't it a question of law that we're dealing with whether that should have been given in this circumstance? You don't need to know anything else at this juncture. Yes or no. I'm not trying to be quizzical or funny, but yes or no. Because of the summary dismissal below, there was no opportunity for the defendant. Almost every case you see is a second stage post-conviction dismissal. We see a lot of firsts. Okay. Your experience is far better than mine. I don't know. You've been at it a lot longer than all of us. The novel review is what's important, though, because it's your, not your, but your court's responsibility to consider this in a broader light. And what's the broader light? There are no core questions here that were directed to the accused to hear from him about any of these things. Now, is it constitutionally mandated? I think so. Now, if the court shares that opinion, the worst that happens here is its return to the circuit court because the summary dismissal is vacated. That's the worst that happens. So, on that issue, that's my position. Justice Taylor, I'd like to go to the second issue, which is kind of thorny, you know, and maybe understating. The state was asked in open court, while we were talking to the defendant, who incidentally wanted to know if he had to give the opening statement. That's how naive he was. Well, that's neither here nor there. The judge asked something about were there any offers. The state said no. Well, now, there was. And there not only was, it was shared with the accused. There was a 10-year second-degree murder offer in advance of trial. And yes, it was tendered to the defendant. And no, by no stretch of the imagination, should the prosecutor and the lead prosecutor at that said no, there were not. Because had there been one, there would have been people versus curry admonitions. I understand. I understand that. So, my question, though, is you're very careful in your pleadings to say it was tentative. You use the word tentative. Now, there are, I checked, there's no case law in Illinois, none, about a tentative plea offer. It's only a plea offer. And the word tentative means it really isn't an offer. I mean, you can jump to that. But tentative means maybe, maybe not. I mean, negotiations, in negotiations going back and forth, that's tentative. It isn't until you get an agreement. Now, a plea offer agreement, that's in the cases. With two experienced criminal lawyers, Cindy Giacchetti and myself, sat down with an accused and said, you have a 10-year second-degree murder offer. If there was none, of course there was. But why do I use that word? I'm trying to be kind to the prosecutor who told the court there was no plea offer. So, I can't say. That's not anywhere in the record before it. That she said no, there was no. No, no, no, that's there. That it was tentative. Again, I'm saying that there's only one important sentence with an exclamation mark where you say it's, don't use the word tentative. Otherwise, it is always with the adjective. Well, my answer to that is very simple. If you were the presiding criminal court judge and you said, were there any plea offers? And I was the prosecutor, I would say, yes, judge, there was a tentative 10-year plea offer. And you would look down and say, what does that mean? Well, judge, that's what it means. You would still give the people versus period munitions to the defendant to make sure the defendant knew what he or she was accepting, rejecting, or is there something here to talk about? Well, but there's no law in Illinois that says a tentative, which is not an agreement. It is not an offer. It's a tentative. That could be going back and forth. You could be sitting in a room and going back and forth when it's tentative. Well, it's nothing we made up because we tendered it to the accused. And yet, when the prosecutor said there was no offer, nobody spoke up. We were at a different table talking to the defendant at that instant who wanted to know if he had to give an opening statement. That's how close this was in time to the beginning of the trial. I didn't even hear it. Cindy didn't hear it. I didn't realize it until I read the darn transcript. But that's not in the record. Is that in the record anywhere that you have an affidavit? I believe I have a post-conviction affidavit. And I believe it's in the record. And you were walking away and you did not hear it? I have an affidavit in the post-conviction record. It refers to that, at least in part. Exactly what it said, I don't recall. But at the time, I submitted the affidavit to the post-conviction court. And the defendant has his affidavit separate from mine. Which is entirely different. But those are things I don't know. But he talks about something, curry admonitions. And he's right. That's the point. He's right. And this judge, the trial judge in Rolling Meadows, he is one of the judges who gives curry admonitions if there's any type of plea offer at all. That's what I'll say to that. Mr. Agnew, you have two minutes left in your, or three minutes left in your 20 minutes. Do you have any final words to close out your opening? Yes. The last issue has to do with an issue having to do with People v. Rudd. There is only a single Illinois case, People v. Rudd. And Rudd refers to the U.S. Supreme Court opinion, Rotherty. And claims that Rotherty settles the entire question, entire question of when the right to counsel starts. Very simple. Wasn't this addressed in the first appeal, the direct appeal? Didn't this court already address Rudd and its applicability? Well, Justice Hyman, who is the writer of that very, very disappointing opinion, did say that he sided with Rudd at this time. There was no law to support my position other than Rudd, I'm sorry, other than my misreading of Rotherty, which is the U.S. Supreme Court opinion. But the Rotherty opinion, and I urge, strenuously urge, your honor to consider the simple language in Rotherty which, which I don't have, but it's cited. Oh, I do have. May I save that for rebuttal? It's fine. Well, you know what I'll use? Finish up your point. Go ahead and finish up your point. Very short. The U.S. Supreme Court in Rotherty 2008 said the following, and this is the only part of it that's important as far as we're concerned. And since we are not asked to extend the right to counsel to appoint earlier than former judicial proceedings, as in Godevia clause, but to defer it to those proceedings in which a prosecutor is involved, which is this case, your case, because the prosecutor here was involved in every stage of the pre-indictment work, including hiring experts, hiring medical experts, hiring a criminal expert, and plumbers to remove a whirlpool and rebuild it in a South Barrington firehouse. Mr. Ackerman, our case was decided in 2022. So this 2008 case, how does this change things? We addressed Rudd, we decided Rudd, and now it seems like a second bite at the apple saying, you know, maybe you got it wrong. Could you send this back down? I don't see how you get this opportunity to argue Rudd again. If that's your Honor's position, I expect your Honor won't agree with my position. I'd like to hear it. For summary judgment purposes only. This is, remember, summary dismissal, not summary judgment. Summary dismissal. There may be something that can be added to it at the second stage. But Judge Martin, who presided in the post-conviction, is the same judge who presided in People v. Rudd. And by the way, he did tell us something. He said that the arrest warrant in Rudd that was a, quote, conditional arrest warrant, was not known to the issuing judge in that case. He has a footnote in his opinion dismissing the summary, granting the state summary, I'm sorry, summary dismissing the post-conviction. So he addressed the issue in his post-conviction. Okay. Thank you, Mr. Eckerman. Thank you. Mr. Piotrczyk. May it please the court. Good morning, Your Honors. And good morning, counsel. Summary dismissal in this case was entirely appropriate because defendants' claims were all meritless. As to issue one, the sufficiency of the defendant's jury waiver admonishments, I think it's key to highlight what Justice Hyman pointed out, which is that the, or that Justice Hyman asked about, which is that this is a good valid jury waiver where the defendant clearly knew that the judge would decide the case and not a jury. And I want to also address opposing counsel's repeated statement that the defendant didn't have the opportunity to say whether or not any threats or promises were made to him. He did in his affidavit, which was attached to the post-conviction petition and defendant's affidavit never says anything about there being any threats or promises made to him to get him to waive jury. So issue one is really just pointless nitpicking of the judge's admonishments, which were more than sufficient under the case law. How should the court proceed? The case law is that signing of the waiver to be considered. But that isn't the end of the question. Right? I mean, there is, there's no law that says you have to give these admonishments, but on the other hand, it's been done for years and good judges do it. And it seems it's appropriate. So here's a case where it's in the waiver. He signed the waiver. There's no question he signed the waiver. That's all on the record. But the questions that should have been asked were not done, particularly this one. Well, how do we, because I mean, looking at other cases, I mean, we want these admonitions being made and here it wasn't given. And what you're saying, are you saying just the waiver alone is enough? Well, I definitely think that the signed waiver combined with the defendant's presence while represented by counsel and counsel's assertion to the court that the defendant is waiving his jury is sufficient under Illinois Supreme Court case law. But I also agree that there's a great deal of utility to the jury waiver admonishments. My problem is with the fact that these were good admonishments here. Yes, the threats and promises question wasn't asked. And I don't think that was an intentional decision so much as just a matter of the back and forth of a judge dealing with a whole lot of different things during this pre-trial conference. A lot of those things opposing counsel was directly involved in asking about. There was also, there were immediately before this, you had a, so you have sort of, you have these questions being asked. And I think, yes, ideally threats and promises, that would be a question that should be asked. However, it absolutely is not a basis for overturning the defendant's jury waiver in this matter. There's absolutely no claim that any threats or promises were made to him and everything about the defendant's waiver, everything that happened is appropriate. And I think the case law that this has to be decided under is the case law of the Illinois Supreme Court, which says that there is no precise formula for jury waivers. And opposing counsel can point to anecdotal cases where the jury waivers included those questions. But the fact of the matter is that he does not have a single case that says that threats and promises question has to be asked. There's not a single case that says this is a requirement when taking a jury waiver. And based on that, this be the case that would make that issue front and center. And it would also be going directly against another first district case, People v. Parker, the case that I cited in my brief, where the defendant, just like in our case, was not asked about threats and promises. The defendant in Parker also had no meaningful criminal justice experience. And this court in Parker reject defendant's challenge to the sufficiency of his jury waiver. And quite frankly, defendant has failed to distinguish Parker. I think that it can absolutely be appropriate to point out the importance of asking this  certainly. Certainly, that's something that can be pointed out. But it's not something that should determine the outcome of this case. Because the court, quite frankly, did a very good job of taking this jury waiver. And there's really no basis to reverse it based on that. If there are no other questions on issue one, I'd like to turn to issue two. With regard to issue two, the ineffective assistance and plea negotiations, defendant's claim is meritless for two reasons. First, defendant's deficient performance claim has no basis in law. And second, the record affirmatively rebuts defendant's claim. Defendant's deficient performance claim has no basis in law because he concedes every requirement of effective assistance during plea negotiations. Defendant's affidavit and counsel's affidavit both acknowledge that counsel informed defendant of the tentative 10-year offer. And defendant still chose, of his own accord, to go to trial. Defendant's only claim of deficient performance is that counsel failed to strongly recommend accepting the tentative offer. But that is not a legally recognized basis for deficient performance in plea negotiations. Simply put, even at the first stage, defendant does not get to make up his own law. The duties of effective assistance during plea negotiations are well established. And this is just not one of them. So for that reason, defendant's deficient performance claim has to be rejected. And his ineffective assistance claim has to fail. Now, also, the record does affirmatively rebut defendant's claim that there was a 10-year offer. And I do want to go through that specific discussion that trial counsel and defendant and the prosecutor all had with the court immediately before trial because it's crucial. And I do respectfully think that that transcript directly contradicts what opposing counsel is referring to today about being at a different table, talking to the defendant about not having to give an opening statement at the time when that question was asked. Because the record actually reflects that that question was asked immediately after the defendant had answered the questions where the judge admonished him regarding the charges he was facing and the possible sentences. So this was immediately after that question where the judge asked the state if there were any offers, and the state said no. Immediately after that, opposing counsel, Mr. Ackerman, immediately started asking the court about whether or not he needed to object to particular pieces of testimony that were introduced that he had already raised pretrial motions on. So he was talking about how the procedure for the trial would go forward. It's immediately during that same conversation. This isn't a situation where the state is talking to the court while the defense and the defendant are talking somewhere else. That's simply not what the transcript was. But we don't know from the record whether there was some time elapsed. I mean, on the transcript, sure, it's one right after another. But time-wise, we don't know. There may have been pauses, but nobody asked for a moment to talk to their client. Nobody, there's nothing in, there's, as Your Honor knows, because Your Honor reads a tremendous number of transcripts, just like myself, and there are a lot of ways in which the real life of a courtroom comes through in transcripts. And in this case, there's absolutely nothing to suggest that this wasn't one after another part of the ordinary discussions immediately before a bench trial starts. And in those discussions, the defendant agreed with the court when the court told him about the possible sentences and the charge he was facing. And the defendant never said that he had been offered a lower sentence on a lesser charge. And he certainly didn't tell the judge that he wanted to accept an offer instead of going to trial. Then immediately after that, based off of the transcript, the court specifically asked if there had been any offers, and the state says no. And the defendant and both of the defendant's very experienced attorneys, none of them spoke up and said, actually, there was an offer. And tellingly, even if opposing counsel hadn't heard that said, neither of the defendant's trial attorneys ever asked the judge to do curry admonishments. So if they hadn't heard that question asked, then it still should have been incumbent on them if there really was this offer, should have been incumbent upon them to ask for curry admonishments if they hadn't heard it mentioned at all. But they didn't. So there really is an absolute dearth of, it goes beyond a dearth of evidence. It actually does affirmatively rebut the defendant's claim of the existence of an offer, because they all remained silent. And you would expect every single one of them, both attorneys and the defendant, you would expect all three of them to have corrected the state on that question if there really was an offer. If there are no further questions on issue two, I'd like to just very briefly address issue three. Issue three is the re-litigation of the applicability of RUD, and this court's analysis and application of RUD. I apologize for interrupting. But I want to go back to the plea offer since you. Yes, your honor. If we accept that the plea offer was, let's say, tentative in that Casa was trying to be courteous in the way it was expressed. But let's say it was tentative and not final. Is there any legal authority that supports your position that a preliminary discussion should be treated as a plea offer for constitutional purposes? Is there anything that we, because if it was tentative. Right. Should they still have given the, gone through that? Well, if your honor accepts that it was tentative and thus not a formal offer. But let's say that even a tentative offer, that's the question.  A tentative offer, which we're not sure what it meant by tentative, right? But let's assume the offer was tentative because you have to talk to your client. I mean, there's many ways you could interpret that as saying, we're making an offer, but it's tentative because we don't know if our client is going to take it or not. So that's an interpretation.  Okay. If that's the way it's being understood, though, shouldn't the judge have done more? Or should we go to the same page? Well, no, because if there wasn't a formal offer, then I would say that the need for a Curry admonishments didn't really exist. However, I would want to actually go back a couple of steps, because if we're saying this is a tentative offer, if you're accepting that, then his entire ineffective assistance of counsel and plea negotiations is destroyed because of the fact that he can't prove prejudice. Because if it's a tentative offer, then it can be revoked at any time because it's never actually been given. So in order to show prejudice in this context, it has to have been an offer that wouldn't have been revoked and would have been accepted by the judge. So the certainty that's necessary for prejudice is gone and his claim is over. I think to answer your more general point, I think that it certainly couldn't hurt to bring up tentative offers to the judge and to do Curry admonishments on them. I think that my brief, as well as the circuit court's dismissal order, both do a good job of pointing out that Curry admonishments aren't a constitutional requirement. They're more of a protection of the record in order to be able to more easily address a lot of post-conviction issues that come up, because what's being talked about in the Curry admonishments is all stuff that the counsel's supposed to have already privately talked to his client about. It's just putting this stuff on the record. But I don't think it would hurt. I want to go back to counsel's claim that he used the term tentative to be polite, to be kind to the prosecutors. I think, once again, I think the record contradicts that because that's actually the terminology that's used not by counsel in counsel's affidavit, but that's the terminology that's used in defendant's handwritten affidavit in this case. He uses tentative. And I think the reason why the defendant uses tentative in his handwritten affidavit is because that's actually what was presented to him. And I think that that's probably most likely a better description than tentative offer is the beginning of plea negotiations. And I would direct your honor to Nissenbaum, the unpublished decision that's attached to my brief, because I think that actually does a good job of distinguishing between an actual offer and a discussion about a possible offer. Because if there was a situation where the defendant might consider taking a 10-year offer, then that might be something that the prosecutor would want to talk to the mother of the victim about. But if the defendant is definitely going to go to trial because he insists he didn't murder his wife, then there's going to be no need for the prosecutors to have perhaps a very painful conversation with the victim's mother about whether or not 10 years is enough time to give justice to the death of her only daughter. So I think it makes sense that there might have been some beginning of a discussion about a possible offer, and that might have been something that the defendant talked to his attorneys a lot about. But the fact of the matter is that there wasn't a formal offer. The state's statement to the court before the bench trial started was entirely accurate, and the defendant and counsel all are completely consistent about one thing, which is that the defendant was the one who decided not to take that offer. So he absolutely had effective assistance of plea negotiation. Opposing counsel can criticize himself as much as he wants for not giving advice, but that's simply not part of the law for effective assistance of plea negotiation. I just want to say briefly with regard to issue three, if we're just done discussing issue two, the decision, the direct appeal decision in this matter did carefully discuss Rudd. The analysis and application was thorough, and it was nuanced. And simply put, the defendant here has not given this court any reason to reconsider its analysis. So as a result of that, it's race judicata, pure and simple. If there are no questions about the third issue, then for the reasons I've stated, as well as those reasons presented in my brief, the people of the state of Illinois ask you to affirm the summary dismissal of defendants post-conviction petition. Thank you, Mr. Demilorcik. Mr. Ackerman, a few minutes in rebuttal. The state just cited in the jury waiver issue, People v.  I addressed that in our reply brief. Young Mr. Parker had a pending weapons case, so he had some experience with the criminal justice system. Regarding the entire universe of clean negotiations, whether the prosecutor misstated something to the circuit court, I think with respect, Your Honor, the court misses the entire question. The entire question is, what is the responsibility of counsel to recommend, to give advice to an accused? We v. United States talks about that. We have a responsibility to advise the client, this is the offer, 10 years, here's the maximum, here's the minimum, 20 to 60. But what about making a recommendation? Why is the court silent on that? Well, giving the defendant numbers 20 to 60, or 10, or 6, or 7, is not the same as making a recommendation. I believe the law should be, I believe the law is, that we are required to make a recommendation if there is a plea offer, tentative or otherwise, where we have to recommend to the defendant what we believe is the right thing to do. That's what's missing from the equation. With respect, Your Honor, so this is a perfect case for this court to tell the entire state of Illinois that defense lawyers have the responsibility of giving a recommendation when there's a plea offer, and not simply turning around and saying, well, it's 20 to 60 for a homicide, so you better take 10, or 5, or 6, or 20, or 15, or whatever the numbers are. You have to be in a position to make a recommendation. As far as people versus Rudd, again, with great respect to the court, and respect to former presiding justice Hyman, Hyman cannot be the law. Because if it's otherwise, police can run to a judge, get a conditional search warrant, a, yeah, as well as a conditional arrest warrant. And if it doesn't work out, come back and cancel it. And you're not going to find in our criminal code anything supporting that. That's it. I thank you so much. Any questions of the panel? Okay, thank you, Mr. Ackerman. And thank you, Mr. Pivovarczyk. The, I appreciate your briefs and your zealous advocacy. This morning, the case is submitted, and the court will issue a decision in due course. Thank you. Have a good day, Your Honor.